May it please the court, I'd like to reserve two minutes for rebuttal. Your honors, under U.S. v. Nava, this court upheld the principle that state law determines title to property, and what we're dealing with here is a forfeiture action against a person, a single mother with two young sons, who has never been charged with a crime, and it is an innocent party whose interest in their home is subject to the forfeiture action of the United States. Shelley Osborn had filed a homestead exemption. Are you going to be addressing the timeliness issue? Your honor, I believe that we have addressed that adequately in our brief. I don't understand it, because it seems to me you're relying on a reading of the interplay between 32.2, Rule 32.2 and Section 853G that doesn't stand up. Your argument depends on that her time ran from sentencing, and I don't know how you get there. Well, she had actual notice before sentencing. Your honor, as I understand it, the United States only contends that her actual notice was when she attended the sentencing hearing for her husband, where he conveyed his interest in the property to the United States, but she was given no notice that her interest was subject to forfeiture at that time at all, and the proper procedures under 853N for giving notice were not adhered to. There's a requirement that all the interested parties be given notice by a certified letter, which was upheld in Duesenberry, and that she was required to receive a certified letter at her home. They knew where she lived. They did not send her a certified letter at all. Didn't they make some service in September? When Shelley retained me, Your Honor, the U.S. Marshal's Office did then serve me, and I looked at the date of the notice and saw that they did not allege that they had given Shelley prior notice at all in front of a receptionist at this joint office facility that I was in, to the extent that I had her fill out an affidavit that it was part of the record here. And the problem with the analysis is that that statute under which notice is to be provided says that within 30 days of the final notice of publication or the receipt of notice, whichever is earlier, and so no notice had been provided Shelley as she was required to receive under 853N, and so by the time that I was served by the U.S. Marshal, the appeal time had long since expired. I felt I needed to try to protect her interests anyway and filed with the district court, and here we are. And I believe that we have multiple bases, as I've set forth in the brief for advocating that the supplemental jurisdiction or the supplemental brief advocating the multiple bases under which we believe that this court has jurisdiction to hear this matter. The government, under the Duesenberry analysis, did not follow the proper procedures, and therefore Shelley should not bear the burden of that problem, but the government should. And we're asking that the court find that there is jurisdiction to hear this matter, and that would lead to the state. The district court found that she had actual notices of August 19th. She was at the change of plea hearing. Your Honor, I would just humbly suggest to the court that Ms. Osborne at best has a GED. She works at a nursing facility there. That's true, but what the government has is a finding by a district court which is better than GED. Granted, Your Honor. At least on appeal. But nevertheless, Your Honor, I would... The district court finds, as a matter of fact, that she's there and she has actual notice. I wasn't there. I don't know. And, Your Honor, I would humbly suggest... What do you do with a finding like that? I believe that it's clear error, Your Honor. A criminal proceeding affecting her husband's interest in the property is not a proceeding to give notice to Shelley Osborne, who was simply there to watch her husband walk out of the courtroom in shackles, not to be seen again. She has since divorced him, by the way. But the fact is it's just clear error that a person would... Perhaps any person, regardless of education, as her husband is standing there and any other defendant saying, I give up my interest in this particular property, should therefore conclude that, oh, I'm giving up my interest in the property as an innocent third party. So... Just so I understand, you were served with the preliminary order of forfeiture on September 28th. Is that correct? Yes, Your Honor. Okay. And then when was the objection filed? Within 30 days of that? I don't have the exact... In December. That's what I thought. Yeah. So why... You have more than a GED, I assume. Pardon? You have more than a GED, and the statute is pretty clear that you have 30 days from receipt of the notice. If it's by publication, then it would run from the date of final publication, or if there's actual service. So she knew as of September 28th that that property was subject to forfeiture. Correct? Your Honor, I would respectfully state that the United States contends that they served her notice August 24th. Well, whatever. What difference does it make? Your Petition, your objection, wasn't filed within 30 days, was it? I didn't interpret it that way, Your Honor. The statute says that the date for filing this objection runs from the earliest of those dates. The earliest was August 24th, when the United States... I dispute that. So we'll pursue that argument. We'll say, fine, that date's no good. And what Judge Fischer's asking, and what I would like to know the answer to as well, is, okay, let's assume the August 24th date is no good. Why doesn't the September 28th date then become operative, and why doesn't she require to file within 30 days of that, which would have been October 28th or 29th or 27th, you know, somewhere around there? Right. And we know that it didn't happen any time in October. It didn't happen any time in November. It happened in December. Yes, Your Honor. It's my opinion that there is no rule that establishes that premise. The rule says that that appeal period begins to run the earliest of those two particular events, whether the letter that the United States contends was sent by regular mail or publication. The earliest of was the August 24th date. And so when I got the notice September 28th, I responded by saying, oh, great, the appeal time is already gone. And so there's no rule then governing what happens after the expiration of that appeal when the third party doesn't get timely notice. There's no rule that says. I don't understand. You're saying that August 24th date is no good because she didn't understand, but yet you can count on it as being the time that triggers the time. I don't understand that. I mean, you can't take those inconsistent positions. Either the August date was fine, in which case she didn't file within 30 days of that, or the August date is bad, and then the next applicable date is September 28th. She didn't file within 30 days of that. How can you? Well, Your Honor, I would once again refer back to Duesenberry that has looked at this issue. What the district court thought, it seems to me, is that she waited until her husband was sentenced because she didn't want to clear the deal. She didn't want to raise her objection and have the district judge say, wait a minute, or the government say, part of the deal here was that you give up the house, and now we've got this objection, so we're not going to go forward with this sweetheart or, you know, this favorable settlement. That's what the district court thought was going on. Well, Your Honor. That's what it sounded awful like to me like was going on. Yes, but I, with all due respect, I'm asserting that the court, the district court erred in that analysis that, and I see my time has expired. Your Honor, I would finish. I'd still love to know the answer. If you want to take the time expired excuse for not answering, that's okay. No, I don't want to. If you want to give an answer. No, Your Honor. I just want to seek the court's permission to exceed that time. And if I'll continue, if that's okay, or I will. It's your call. If you want to continue, you can pause. I'd like to just take 30 seconds, if I might, to continue. Secondly, or as another basis for jurisdiction, we asserted the Federal Rule of Criminal Procedure 41-G. In Duesenberry, that defendant was allowed up to 15 years after sentencing to assert the property interest, and that's what underlies Duesenberry. And I would ask the court to use the Duesenberry analysis. Finally, if I have erred, Your Honor, then I would ask, I would fall on my sword and ask that my client, a single mother with two young boys, not be divested of her home if I have made a mistake. And I would ask the court, as I did in my brief, to put that burden on me then. And I thank you. Okay? It's a good thing we don't give lawyers swords, you know. We'll hear from the government. Good morning. My name is Joe Thagard. I'm an assistant U.S. attorney from Helena, and I represent the government in this matter. Let me, before you, let me ask you some questions that have been troubling about this case. So as I understand it, these two had a joint tenancy interest in the property. That's correct, Your Honor. Right? So he only had one-half interest under Montana law. That's correct. He had one-half. The criminal forfeiture in the criminal proceeding, the forfeiture of his interest in that property is what was at stake. Yes, it is. However, because there was a joint tenancy and they had equal shares, essentially, it was sort of an all or nothing outcome. Well, so how could he – how could the court forfeit her interest? Well, I think what the court could do is, first of all, she had to respond. I mean, that was the threshold issue. No, no, no. Well, wait a minute. I just want to make sure I understand. She only had one – she had a half interest, right? That's correct. The criminal proceeding goes against him and it's in personam against him and he agrees to forfeit the property. That's correct. Then there's an ancillary proceeding that takes place against anybody who claims that they have a superior interest in the part that was forfeited, right? That's correct. Okay. So how do they – how does the government get her one-half interest? Well, by virtue of the preliminary order of forfeiture, the burden is then actually shifted on her under the statute to come in and establish by a preponderance of the evidence either that she's got a superior title or that she was a bona fide purchaser for value and didn't realize that the property was subject to forfeiture. So if she – here, let's just – she didn't – let's forget all the notice issues we've been talking about. She doesn't do anything. When the district court judge entered the final order, he can forfeit her interest as well? Yes. Assuming that she does not meet one of those standards, the Court can do that. You know, I find that a little odd. I think where you went astray is in answering Judge Pius's first question. And I'm – if that's what you want to stick by, it's fine. But he asserted – and let me ask you the question once again. He asked you. I mean, it was an assertion to which you agreed, so it was a question. So let me ask it in the form of a question to make sure. Did he own half the property or all the property? Joint tenancy. Well, yeah, and I think – Which one is it? He owns all of it. I don't want to have speech. Yeah. Did he own all of it? He owned all of it, Your Honor. Okay. So, again, you – as I understood Judge Pius's question, and I think you assented and maybe you didn't notice the differences, you are not taking the position that he only owned half of it.  And I misspoke, and frankly, I – It's like if you own a joint bank account with your wife, you can go and empty the bank account of every penny because you own all of it, right? I'm sorry. I'm only paraphrasing what I understand to be your position, right? A joint tenant owns a whole. And you're absolutely right. No, actually, it really is a question. I was – Yes, and I think I'm betraying the fact that I've been a criminal prosecutor for 20 years and haven't done property law and haven't been married for a long time. My favorite course in law school. I still remember. I recognize that. And, no, that is correct. You can win your case right now if you tell me the rule in Shelley's case. I'm kidding. I don't know that or the rule against perpetuities, Your Honor. Actually, this is Shelley's case, and the rule is going to be whatever we decide in this case. And that's true. If she had filed a timely – forgetting all the issues on timeliness – if she had filed a timely petition or ancillary proceeding, invoked the ancillary proceedings in a timely manner and had met the standard that she was not aware of all the drug nonsense, she could – she could have retained title to the property? No, because she still wouldn't have superior title. Why wouldn't she have – be entitled to half of it? I'm sorry? Why wouldn't she be entitled to her half? In other words, government gets his half of the commonly owned, the joint tenant property – jointly tenantly owned property. Sure. And I think that the answer to that is the statute itself. It simply says that unless they establish – unless the movement establishes a superior title, it's worth it. Superior to what? Superior to what? Superior to his title, to the title that's worth it. Well, it seems to me this is a question of Montana law that nobody has really addressed as to what are the rights of a joint tenant in Montana to property that's held in joint tenancy. I mean, could, for example, the husband have sold the entire property? Let's say the wife is off on a trip somewhere or, you know, is not aware of it, and the husband decides to sell the house just on the market, finds a real estate broker, people see the house, they like it, they say, well, we'll buy it. Could he have sold the house on his own? I think the answer is no, because actually under the statute titled vested in the United States – No, no, I'm sorry. Forget about the United States. Let's say this was just a married couple in Montana before all the trouble with the government started. Could – did he have the right under Montana law to sell the house without having the wife cosign? Right. I understand. I don't know what the answer is. I sort of know the answer in California, but – but do you know the answer in Montana? You know, I don't. And I mean, obviously, there would be issues. But that's really the question, isn't it? The question is, if he can't – if he doesn't have full right to the property, if he can't sell the whole thing on his own, then he can't – he can't forfeit the whole thing. He can only forfeit what he himself can dispose of, right? Does he have to go to court in Montana and get a partitioning of the property, which happens sometimes. Sometimes you have joint tenants or tenants in common or have a falling out, and they can't work it out, and then they go to court and get a partitioning. So I don't know. Nobody's – nobody's discussed this. And I agree that – I think that that is something that needs to be discussed, and I think it's – Do you send it back to Juslow to figure that out? Well, I don't think that that's necessary because of the notice issue and because of the timeliness of the filing. No, but you don't get anywhere because he can't forfeit more than he owns. So she doesn't need notice. She doesn't – you know, he only forfeits. He only forfeits his half, right? I mean, he can't forfeit what he doesn't own. Well, but the fact of the matter remains that the burden is still on her to come in and establish what her ownership interest is, if any, and that she's entitled to something. And she failed to do that. But she should have come in and said, I'm a joint tenant. You can't forfeit this whole property. She should have come in and said that and established, you know, and I think that in this instance, because of the sort of chain of events here. What if she agrees? She says, you know, I don't really, you know, I'm very sorry to find out that my husband lost his share of the house, but I can't really claim to have a superior title to his half of the house. I – there's no point in my bringing an objection because there's no valid objection I can raise as to his half of the house. On the other hand, as to the part that I own, that's not – that's part the government can't touch because the forfeiture statute doesn't cover it. And I think that that returns to the discussion we had early on where, you know, I had to reassess really what the nature of his ownership is. And it is, in fact, that he owns it all. Does he? Because the statute says that the petitioner – I'm reading from 853 N6A. The petitioner has the legal right, title, or interest in property, and that interest was vested in the petitioner rather than the defendant. You said it had to be superior. But do we know under Montana law whether her half interest was vested in her rather than the defendant? Well, I think that under Montana law that the presumption is that it's vested in both of them. And I think that the Roush v. Hogan case addresses that, that there's a presumption. But if she dies, if a spouse, another joint tenancy dies, you file the certificate of death, and that merges that deceased spouse's interest into the surviving spouse. That's correct. That's how a joint tenancy works. But while they're alive, I just don't know what the answer is, whether they own an undivided half interest each or whether they own 100 percent – both of them own 100 percent of the whole. And I think that the answer is that under Montana law it's presumed that it's 100 percent ownership in both of them. And your citation for that is? Is Roush v. Hogan, which is cited in the briefs. They say each owns an equal share in the property, is what Roush v. Hogan says. Actually, Roush seems to undercut your position rather than support it. Well, I think it's an equal share of the entirety, Your Honor. Well, that's the question. They could own an equal share of the entirety, or they could own an undivided half. They could have an equal share of half of the property. They're both equal shares, right? Yes. It's simply a matter of what's an equal share of. So Roush doesn't help you. Well, my position is that I think it does. Tell me how. I've got it right in front of me. Pardon? I've got it right in front of me. Tell me how it helps you. Well, again, I think that it's simply talking about the equality of shares, and it may not say that it's an equality of the entire share or of the entire property, but I think that that's the logical conclusion when you're looking at a joint tenancy. And if we disagree with you on that, you lose, right? No, I don't think I do. I mean, I think then the worst situation would be, as you say, perhaps a remand with a direction to Judge Lovell to determine what the ownership interest is. Should we send it to the Montana Supreme Court? I don't think that it's necessary. And, again, but that's No, no. I'm not asking whether it's necessary. I'm asking you whether we should. I don't think so. Would it be wise? Would the United States object to sending it to them? Well, I would, because, frankly, I think that we win on the timeliness of the filing of the petition. He would love to appear before the Montana Supreme Court. Pardon? He would love to appear before the Montana Supreme Court. I have appeared before the Montana Supreme Court. Where do they sit? They sit in Helena. Oh, well. That's right. Six blocks or a half a mile from where I am. Well, I'm reading. I'm not really adjusting. I'm just wondering. I mean, I don't know what the answer is under Montana law. I don't think Rausch gives us an answer. All Rausch says is whatever it is they own, it's equal. It's not three-quarters, one-quarter. It's presumptively equal shares. But it doesn't tell us whether the equal shares are 100 percent of the whole, which they both own, or whether they each own half. And I understand that. And, again, my position is simply. My theory, and you're reading in the statute, is that the property is forfeited as of the conviction. And then all of this proceeding that follows is to give anybody else on that property, besides the defendant, the opportunity to come in and establish that they are, A, a joint tenant, and, B, therefore, their half share of the commonly owned property is not subject to forfeiture because it's title vested in them, not in the defendant. You're arguing that she would have to show her title as superior. That, I don't think, is supported by Rausch at all. But the question is whether she has a vested interest in half. And I'm not sure why Rausch doesn't suggest that she does have a vested interest, so that once the attachment or once the forfeiture is lodged against a joint tenancy property, as a matter of Montana law, it only reaches the defendant's half. It's not clear to me whether or not the person who owns the other half has to do anything. Well, and, yeah, my position simply would be, Your Honor, that under 853N, that she has an obligation to come in and show either superior title or bona fide purchaser who ---- No. I understand that's your position. But the statute says, before Superior says, as I read, that she has a share that's vested. Well, but I think that under ---- if I can continue, under 853N-2, it's very clear that it actually has to be superior. Well, then why is they ---- why are they asking the ---- But that's all directed ---- They were just reading that, you know. But that's all directed towards the forfeiture against the defendant. Well, but, no, it's actually under the third-party interest section, Your Honor.  Where do you see that? It's under N-2. Yeah. Where do you see that superior? Any person other than the defendant asserting a legal interest. Which has been ordered forfeited. Yeah. To the United States. Right, right. Pursuant to this section, may within 30 days of ---- Right. So the only thing that bothered me is that the only ---- well, you know, I didn't really ---- honestly, I didn't delve into the intricacies of Montana property law, but it struck me that the only interest that he could forfeit was his one-half share. And she still possessed her one-half. So, you know, I just find this all very troubling. Go on to ---- in line with that, go on to subsection 6. Yes. If after the hearing the Court determines that the Petitioner has established by preponderance of the evidence that, A, the Petitioner has a legal right, title or interest in the property that renders the order of forfeiture invalid and whole or in part because the right, title or interest of the Petitioner was vested in the Petitioner rather than the defendant. Yes. Or, or was superior. Yes. And I concede, Your Honor, you're correct. Thank you. It's in the disjunctive. It is. That's what I read the first time. It's always been. Okay. So to restate your position, she, in order to protect that, assume it under Montana law that all she had to show was the deed that made her a joint tenant. That was the end of the trial, end of the hearing, end of issue, because it was vested in her rather than the defendant. And the notice issue kills that slam dunk because she didn't go in and show it to the court, so which would mean that we would then have to construe the statute as forfeiting property, notwithstanding it would absolutely, uncontestedly, I'm assuming these are the Montana facts, be clearly not forfeitable had all she shown up in court with was the deed in front of the court. Now, my question I have, did the court have the deed in front of it? It did have the quick claim deeds in front of it. Then why wasn't it plain error for the court to proceed to forfeit the entirety when the deed, the one, all the proof that the court needed, all the evidence that the court needed was before it with respect to the defendant's interest? In other words, all that the court could forfeit was what the defendant owned. And if under Montana law, what the court had before it was a deed that per Montana law, as a matter of law, only vested half of the interest in the defendant, it seems to me there's no way that this should be forfeited to the wife because she doesn't show up. Well, and so let's suppose that the notice went out and she was actually never got the notice, but it was notice in publication. And so she'd be out of luck because as an operation of law, she never got a chance to come in and put the deed, the same deed in front of the court. Well, if she had been able to show excusable neglect for the failure to file a timely petition, then she would have been in a position to show it to the court. Okay. Thank you. You can have a minute. Thank you, Your Honors. I might call attention to page 13 of my brief where I do discuss these issues. And we would argue, in addition, that Shelley's title was superior because the government contends that the criminal activity predated their purchase. And so, therefore, the unities of title, interest, time, and possession, cannot have been met. So Dan's interest never ripened. The moment he did those things, the government contends that its interest in the title became ripe. That's a somewhat esoteric aspect, but it flows from Roush v. Hogan. And then, finally, under that same theory, the next step, then, in the last paragraph on page 13 is that because his interest didn't vest, his interest was severed, that joint tenancy was severed, and it became a tenancy in common in Shelley's name alone under Montana law. And the Court has wisely and astutely observed that State law governs title to this property. Well, don't overreach. I missed. What is it that you think converted this to a tenancy in common? The fact that the unities of title could not exist under the United States theory. Dan's interest could not have even vested on February 1, 2005, when the father deeded them the property, because the United States contends his criminal activity predated that time. So it's as though he secretly was taking this deed and his interest flowed right through to the government. So it's a somewhat esoteric point, but the unities of title could not exist under the United States theory. Dan could not have taken his joint tenancy. That tenancy was severed under the United States' own theory, resulting in the tenancy in common solely in favor of Shelley. And that's supported under 20 Amateur II, Section 31. Where did the money come for her half? The father bought the property at a relatively low price because a fellow was going to lose it because he hadn't paid his taxes. He then sold it to Shelley and Dan. Shelley paid for the property, and it was a pretty low price. I mean, I had $10,000 or $15,000 or so from tax refunds over several years. The United States has never alleged that this was purchased with drug money. And so Shelley, working at her job, paid her dad. And there was no ability to, you know, given the truncation of these proceedings at the lower court, to show these particular facts. We've alleged them. But Dan has a community property estate? No. It's a separate property estate. Yes. I mean, common law property estate. Yes. I'm confused. I don't know how those states work. So when a spouse earns community property, I understand. But in a common law estate, when a spouse earns income, that income belongs to the earning spouse or belongs to the community? I mean, how does that work? Well, in various types of proceedings in Montana that I've experienced, there is a tracing process that can be allowed, that could have been allowed here, and it could have been very informative to the court. How barbaric. Community property is much better. We'll move the legislation. Well, no, at least it's much simpler, you know. Yes. Everything owned by the community. It's a partnership, and whatever the spouses do all goes in a big pot. It's owned by both spouses. But that's not Montana. Right. And we have held in the brief here, bottom of page 13, top of page 14, that Roush governs that. Okay. Thank you. Thank you. We're going to take a short recess. Thank you.
judges: Kozinski, Fisher, Paez